# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| GLORIA MORGAN, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 14-00181-KD-B |
| ) | |
| PNC BANK, NATIONAL ASSOCIATION, ) | |
|     Defendant. ) | |

## ORDER

This action is before the Court on Defendant's Amendment to Notice of Removal (Doc. 8), timely filed in response to the Court's Order *sua sponte* addressing subject-matter jurisdiction (Doc. 5), along with Plaintiff's Motion to Remand (Doc. 7). Upon consideration, the Court finds that, though given the opportunity, Defendant has failed to establish that the Court has subject-matter jurisdiction over this case. Accordingly, Plaintiff's Motion to Remand (Doc. 7) is due to be **GRANTED**.

### I. Procedural History

On April 23, 2014, Defendant initiated this action by removing the case from the Circuit Court of Dallas County, Alabama, under 28 U.S.C. § 1441(a). (Doc. 1). Defendant's notice of removal alleged federal question jurisdiction under 28 U.S.C. § 1331[1] as the sole basis for the Court's subject-matter jurisdiction over the claims asserted. On April 30, 2014, following a review of the record, the Court *sua sponte* determined that "Defendant, as the party who sought removal in this action, has failed to meet its burden of demonstrating that subject-matter jurisdiction exists." (Doc. 5 at 7). Defendant was granted until May 7, 2014, to file "whatever materials it deems necessary to demonstrate to the Court that subject-matter jurisdiction exists in this action." (Id.).

---

[1] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Defendant's Amendment to Notice of Removal (Doc. 8) was timely filed by this deadline. It too asserts only federal question jurisdiction under § 1331 as the basis for the Court's subject-matter jurisdiction over the claims asserted. Between the entry of the Court's Order (Doc. 5) and the filing of Defendant's Amendment (Doc. 8), Plaintiff filed her Motion to Remand (Doc. 7), which also asserts that federal question jurisdiction does not exist in this action.

**II.     Analysis**

The Court has already determined that the record as it existed on April 30, 2014, does not support a finding of subject-matter jurisdiction in this action. (Doc. 5). The Court renews that determination and will herein address only whether Defendant has sufficiently cured that defect in its Amendment to Notice of Removal (Doc. 8). For the following reasons, the Court finds that Defendant has not done so. See, e.g., Kirkland v. Midland Mortgage Co., 243 F.3d 1277, 1281 n.5 (11th Cir. 2001) ("[I]n removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists.").

"It is . . . axiomatic that the inferior federal courts are courts of limited jurisdiction. They are 'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 409 (11th Cir. 1999) (quoting Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994)). "Congress has provided for removal of cases from state court to federal court when the plaintiff's complaint alleges a claim arising under federal law." Rivet v. Regions Bank of Louisiana, 522 U.S. 470, 472 (1998). Where, as here, only state-law claims are asserted in a complaint, a claim "aris[es] under" federal law if it "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally

approved balance of federal and state judicial responsibilities." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005); Gunn v. Minton, 133 S. Ct. 1059, 1065 (2013). "The test ordinarily applied for determining whether a claim arises under federal law is whether a federal question appears on the face of the plaintiff's well-pleaded complaint." Cmty. State Bank v. Strong, 651 F.3d 1241, 1251 (11th Cir. 2011), cert. denied, 133 S. Ct. 101 (2012).

Previously, the Court found that "Defendant's notice of removal does not persuade the Court that Plaintiff's fleeting, unspecified references to federal law[ in her TRO Petition] implicates federal issues that are '(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in the federal court without disrupting the federal-state balance approved by Congress.' " (Doc. 5 at 5 (quoting Gunn, 133 S. Ct. at 1065)). The Court finds that Defendant's Amendment to Notice of Removal (Doc. 8) similarly fails to persuade. However, subject matter jurisdiction is not established even under the arguments Defendant has presented in its Amendment (Doc. 8).

Defendant asserts that the Court "has jurisdiction over this case because Plaintiff's TRO Petition is based at least in part on the federal Home Affordable Modification Program ('HAMP')." (Doc. 8 at 2). The Eleventh Circuit has explained HAMP as follows:

> During the economic crisis of 2008, Congress passed the Emergency Economic Stabilization Act of 2008 (EESA), 12 U.S.C. §§ 5201–5261. EESA charges the Secretary of the United States Department of the Treasury with acting in a manner that "preserves homeownership and promotes jobs and economic growth." Id. § 5201(2)(B). To this end, the Department of the Treasury created the Making Home Affordable Program, a program that included HAMP.

Miller v. Chase Home Fin., LLC, 677 F.3d 1113, 1115-16 (11th Cir. 2012).

As Defendant notes, the Eleventh Circuit has determined that neither HAMP nor EESA expressly or impliedly creates "a private right of action for borrowers against loan servicers . . ." Miller, 677 F.3d at 1116. Accord Mathis v. Nationstar Mortgage, Ltd., Civ. A. No.

3

12-0386-WS-N, 2012 WL 6162233, at *4 (S.D. Ala. Dec. 11, 2012) (Steele, C.J.) ("In Miller v. Chase Home Finance, LLC, 677 F.3d 1113 (11th Cir. 2012), the Eleventh Circuit ruled that '[n]either HAMP nor EESA expressly creates a private right of action for borrowers against loan servicers.' Id. at 1116. The Court then 'addressed ... whether there is an implied private right of action under HAMP.' Id. After engaging in the standard analysis of such issues, the Court 'conclude[d] that no such right exists.' Id. The parties agree that Miller precludes a federal cause of action under HAMP.").

In arguing that Plaintiff is making claims based on HAMP, Defendant asserts: "Plaintiff is claiming that she applied for a loan modification and she is seeking to enjoin PNC from foreclosing until she obtains a loan modification… Significantly, there should be no dispute that Plaintiff submitted an application for a loan modification under HAMP or that her application was denied." (Doc. 8 at 2). Miller applies squarely to such a situation, precluding a private cause of action in such circumstances. See Mathis, 2012 WL 6162233, at *6 ("Miller applies when the defendant declines to modify the loan and the plaintiff alleges that the failure to modify violates the defendant's obligations under HAMP. Those obligations, according to Miller, are 'to abide by guidelines promulgated by the Secretary when determining a mortgagor's eligibility for a permanent loan modification.' 677 F.3d at 1116. Here, the plaintiffs do not complain of a failure to modify the loan or of a breach of obligations in considering whether to modify a loan. Instead, they allege that a loan modification agreement was in fact entered but that the defendants have not honored their agreement with the plaintiffs. Miller does not reach such a situation.").

In Jairath v. Dyer, 154 F.3d 1280 (11th Cir. 1998), the plaintiff "brought suit[ in state court] pursuant to [a Georgia statute], for damages based upon a breach of a duty created under the Americans with Disabilities Act ('ADA'), pursuant to 42 U.S.C. § 12182(a). The

4

defendant,…asserting that the case involved a substantial question of federal law, filed a notice of removal in federal court." Jairath, 154 F.3d at 1280-81. The Eleventh Circuit concluded that, because the ADA did not provide a private damages remedy for the kind of ADA violation the plaintiff asserted, "the district court lacked subject-matter jurisdiction over th[e] case because [the plaintiff]'s claims do not 'arise under' federal law." Id. at 1281, 1283-84. In so holding, the Jairath court found "closely analogous" the case of Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, (1986), in which "the plaintiffs alleged, *inter alia,* that the defendant drug company was negligent, and that its violation of the federal Food, Drug and Cosmetic Act ('FCDA') constituted a rebuttable presumption of negligence. The violation alleged by plaintiff was that the drug company had misbranded its product, and provided inadequate warning that its use was potentially dangerous. Thus, violation of the federal law was an element of the state law claim." Jairath, 154 F.3d at 1282.

> In Merrell Dow, the Court focused on the fact that Congress had not created a private remedy for violation of the federal duty with respect to misbranding. The Court placed great significance on the congressional intention not to provide a private federal remedy. The Court stated:
>
>> [I]t would flout congressional intent to provide a private federal remedy for the violation of the federal statute. We think it would similarly flout, or at least undermine, congressional intent to conclude that the federal courts might nevertheless exercise federal-question jurisdiction and provide remedies for violations of that federal statute solely because the violation of the federal statute is said to be a "rebuttable presumption" or a "proximate cause" under state law, rather than a federal action under federal law.
>
> [Merrell Dow, 478 U.S.] at 812, 106 S. Ct. at 3234 (footnotes omitted). The Court continued:
>
>> Given the significance of the assumed congressional determination to preclude federal private remedies, the presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system....

5

> We simply conclude that the congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently "substantial" to confer federal-question jurisdiction.
>
> Id. at 814, 106 S. Ct. at 3235.

Id. at 1282-83.

As with the ADA violation at issue in Jairath and the FCDA violation at issue in Merrill Dow, the Court finds that "the congressional intent not to provide a private []remedy" under HAMP or EESA is " 'tantamount to a congressional conclusion that the presence of a claimed violation of the[ program or] statute as an element of a state cause of action is insufficiently "substantial" to confer federal-question jurisdiction.' " Jairath, 154 F.3d at 1284 (quoting Merrell Dow, 478 U.S. at 814).[2]

Other federal district courts have reached similar conclusions regarding state law claims that may implicate HAMP. See White v. Wells Fargo Home Mortgage, No. 1:11-CV-408-MHT, 2011 WL 3666613, at *1-2 (M.D. Ala. Aug. 22, 2011) (Thompson, J.)

---

[2] Jairath acknowledged:

> In this circuit, the absence of a private cause of action does not *per se* dictate that there is no federal-question jurisdiction when a federal duty is incorporated as an element of a state cause of action. City of Huntsville[ v. City of Madison], 24 F.3d [169,] 174[ (11th Cir. 1994)]. See also Ormet Corp. v. Ohio Power Co., 98 F.3d 799 (4th Cir. 1996) (finding federal-question jurisdiction, primarily on the basis of the need for uniformity, where a state law cause of action incorporated as an element the violation of a federal statute relating to the proper apportionment and ownership of emission allowances under the Clean Water Act). However, we held in the City of Huntsville that "it will be only the exceptional federal statute that does not provide for a private remedy but still raises a federal question substantial enough to confer federal question jurisdiction when it is an element of a state cause of action." Id. at 174.

154 F.3d at 1284 n.10. As in Jaraith, "Defendant has pointed to nothing to indicate that the instant case should rise to that exceptional level." Id.

("Wells Fargo submits that this court has subject-matter jurisdiction over White's ostensibly state-law claims because adjudicating those claims would require a court to resolve important federal issues related to HAMP. This is simply not the case."); Dean v. BAC Home Loans Servicing, LP, No. 2:11-CV-785-MEF, 2012 WL 353766, at *2-4 (M.D. Ala. Feb. 3, 2012) (Fuller, J.) ("Ultimately, whatever role HAMP plays in any of these causes of action, if any, the lack of substantiality of the federal question is belied by the fact that HAMP, as authorized by the EESA, contains no private right of action…In Merrell–Dow, the Supreme Court found the lack of a federal private right of action quite nearly dispositive…"); Mosley v. Wells Fargo Bank, N.A., 802 F. Supp. 2d 695, 699 (E.D. Va. 2011) (Davis, J.) ("[I]n cases that *directly allege* causes of action for violations of HAMP itself, this Court has inferred the existence of federal-question subject-matter jurisdiction and dismissed the claims on the basis of Rule 12(b)(6) for failure to state a claim upon which relief can be granted…However, when presented with removed cases that allege state-law breach of contract and tort claims that *merely reference* HAMP guidelines and procedures, this Court has consistently held that it lacks federal-question subject-matter jurisdiction over such claims… Plaintiff's removed state-court Complaint only alleges state-law contract and tort claims and a violation of the VCPA, not a federal HAMP violation cause of action. Therefore, because Plaintiff's Complaint merely references HAMP guidelines and procedures, and does not attempt to allege directly a federal HAMP violation cause of action, the Court concludes that there is no federal-question subject-matter jurisdiction. In other words, Plaintiff's right to relief for the state-law claims does not necessarily depend on resolution of a substantial question of federal law, particularly where federal law does not create a private right of action. See Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808, 106 S. Ct. 3229, 92 L. Ed. 2d 650 (1986)."); Melton v. Suntrust Bank, 780 F. Supp. 2d 458, 460 (E.D.

Va. 2011) (Smith, J.) ("Federal courts are not bestowed with subject matter jurisdiction over ordinary state law claims merely because HAMP is an element of the dispute."); Gretsch v. Vantium Capital, Inc., Civil Action No. 11-2328 DSD/AJB, 2011 WL 6754079, at *2 (D. Minn. Dec. 23, 2011) ("Where, as here, a defendant alleges federal-question jurisdiction on the basis that state law implicates a substantial federal question, the court begins by examining whether the federal law creates a private right of action. See Merrell Dow, 478 U.S. at 817. Federal courts, in this district and others, have uniformly held that HAMP does not create a private right of action…Since the complaint merely references HAMP guidelines, and does not attempt to directly allege a federal HAMP cause of action, federal subject-matter jurisdiction is lacking…This court joins other courts in finding that state-law claims alleging violations of HAMP guidelines do not create federal-question jurisdiction." (citing cases)).

The Supreme Court has since moderated its reasoning in Merrill Dow, stating:

> Merrell Dow should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of, the "sensitive judgments about congressional intent" that § 1331 requires. The absence of any federal cause of action affected Merrell Dow's result two ways. The Court saw the fact as worth some consideration in the assessment of substantiality. But its primary importance emerged when the Court treated the combination of no federal cause of action and no preemption of state remedies for misbranding as an important clue to Congress's conception of the scope of jurisdiction to be exercised under § 1331. The Court saw the missing cause of action not as a missing federal door key, always required, but as a missing welcome mat, required in the circumstances, when exercising federal jurisdiction over a state misbranding action would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues. For if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action. And that would have meant a tremendous number of cases.

Grable & Sons, 545 U.S. at 318.

As to this point, the Court agrees with the following reasoning of the Middle District of

Alabama:

> [N]ot only is the "federal door key" missing given the lack of substantiality of the federal question (HAMP) to these state-law causes of action, but there is also a "missing welcome mat." [Grable & Sons, 545 U.S.] at 318. This country has been wallowing in an enduring housing crisis, and the number of distressed mortgages is estimated to be in the multi-millions, with the number of HAMP eligible loans also likely numbering in the millions. See, e.g., Robbie Whelan, How Many Homes Are in Trouble?, The Wall Street Journal, Nov. 11, 2011 (compiling results of five research groups and reporting results); see also Ann Carrns, After Long Ordeal, a Homeowner Can Stay Home, N.Y. Times, Nov. 8, 2011 (describing an "onslaught of modification applications" and quoting a Chase Bank representative who stated that Chase alone was " 'help [ing] 404,000 families get permanent modifications' "). If the federal courts were to exercise embedded federal issue federal-question jurisdiction over these types of cases, the current of litigation between the federal and state courts would be disrupted on a grand scale, as if re-routing the Mississippi River's mouth from Venice to Houma. In short, exercising federal-question jurisdiction would open the proverbial floodgates to a rush of original and removed filings relating to these underwater mortgages. The resulting deluge would disturb the traditional balance of federal and state judicial responsibilities. Grable & Sons Metal Prods., Inc., 545 U.S. at 314; see also White, 2011 WL 3666613, at *2.

Dean, 2012 WL 353766, at *4 (footnotes omitted). See also Gretsch, 2011 WL 6754079, at *2 ("Further, unlike in Grable, this case does not involve a question of whether a federal agency complied with a federal statute. In Grable, the federal question was substantial and its resolution was 'both dispositive of the case and would be controlling in numerous other cases.' Empire[ Healthchoice Assurance, Inc. v. McVeigh], 547 U.S. [677,] 700[ (2006)] (quoting Grable, 545 U.S. at 313). Plaintiff alleges infringement of HAMP guidelines in violation of Minnesota Statutes § 58.13, but the claim does not involve a federal agency and would not be controlling in numerous other cases due to the fact-intensive inquiry required by this court. There is no 'nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous [similar cases].' Id. at 700 (internal quotation marks omitted).").

Perhaps recognizing that its initial arguments asserting HAMP as a basis for federal question jurisdiction have not met with favor in federal courts, Defendant attempts a slightly different tack in the alternative. Defendant asserts that a loan servicer such as it "has no obligation to comply with HAMP unless the servicer has elected to participate in the HAMP program by entering into a servicer participation agreement." (Doc. 8 at 4). See Miller, 677 F.3d at 1116 ("HAMP is designed to prevent avoidable home foreclosures by incentivizing loan servicers to reduce the required monthly mortgage payments for certain struggling homeowners. Servicers are obliged to abide by guidelines promulgated by the Secretary when determining a mortgagor's eligibility for a permanent loan modification. U.S. Dep't of Treasury, Making Home Affordable Program, Handbook for Servicers of Non–GSE Mortgages at 27 (Dec. 15, 2011). To assure that servicers comply with the guidelines, the Secretary designated Freddie Mac to conduct compliance assessments of HAMP participants."). "Consequently," Defendant asserts, "whether a borrower has standing to assert alleged violations of HAMP guidelines must depend on whether the servicer has entered into a servicer participation agreement and whether the borrower is a third-party beneficiary of that agreement. Because the question of a borrower's standing to assert claims for an alleged violation of HAMP requires interpretation of the servicer participation agreement, a federal court has jurisdiction to decide this issue." (Doc. 8 at 4). Defendant, who has entered into a servicer participation agreement with the Federal National Mortgage Association (a/k/a Fannie Mae), therefore "believes that Plaintiff is claiming to be a third-party beneficiary of the" agreement. (Doc. 8 at 5).

First, this argument asks the Court to read far beyond the allegations in Plaintiff's "well-pleaded complaint" (i.e. her TRO Petition (Doc 1-1 at 1-4)), which do not support a finding that Plaintiff is even attempting such an argument. Moreover, the Supreme Court has

held that, when a party has no private right of action under a federal statute, "it would make scant sense to allow them to sue on a form contract implementing the statute, setting out terms identical to those contained in the statute…A third-party suit to enforce [such a contract], []is in essence a suit to enforce the statute itself. The absence of a private right to enforce []statutory []obligations would be rendered meaningless if []entities could overcome that obstacle by suing to enforce the contract's [implementation of those statutory obligations] instead. The statutory and contractual obligations, in short, are one and the same." Astra USA, Inc. v. Santa Clara Cnty., Cal., 131 S. Ct. 1342, 1345, 1348 (2011).[3] See also Sterk v. Redbox Automated Retail, LLC, No. 11 C 1729, 2012 WL 1419071, at *3 (N.D. Ill. Apr. 24, 2012) ("In Astra USA, Inc. v. Santa Clara County, ⸺ U.S. ⸺, 131 S. Ct. 1342, 179 L. Ed. 2d 457 (2011), the Supreme Court rejected a plaintiff's attempt to sue for breach of contract when the contract incorporated the requirements of a statute but the statute itself did not provide a private right of action.").

---

[3]

> Astra involved section 340B of the Public Health Services Act, 42 U.S.C. § 256b (West Supp. 2011). Section 340B imposes ceilings on the prices drug manufacturers charge for medicine sold to certain health care facilities. Astra, 131 S. Ct. at 1345. Drug manufacturers opt into the 340B program by signing a uniform agreement called the Pharmaceutical Pricing Agreement ("PPA"). The PPAs are uniform agreements which recite the provisions of section 340B. Id. In Astra, the health care providers conceded that Congress did not intend to create a private right of action under section 340B for those entities who charge prices exceeding the statutory ceiling. Id. The issue was whether they could sue as third-party beneficiaries under the PPAs. Id. The Supreme Court held that they could not: "PPAs simply incorporate statutory obligations and record the manufacturers agreement to abide by them." Id. at 1348. Therefore, "[t]he absence of a private right to enforce the [statute] ... would be rendered meaningless if 340B entities could overcome that obstacle by suing to enforce the contract's ceiling price obligations instead." Id. According to the Court, "[t]he statutory and contractual obligations, in short, are one and the same." Id. Because private suits to enforce section 340B and third-party suits to enforce the contract implementing section 340B were effectively the same in substance, "[t]heir treatment, therefore, must also be the same." Id. at 1345.

Carter v. United States, 102 Fed. Cl. 61, 71 (Fed. Cl. 2011).

The Middle District of Georgia has previously determined that servicer participation agreements implementing HAMP do not give rise to third-party beneficiary claims:

> [I]n order to assert a third-party beneficiary breach of contract claim, Plaintiff must first be an intended third-party beneficiary to the Servicer Participation Agreement ("Agreement") between Defendant and the federal government. See e.g. Danjor, Inc. v. Corp. Constr., Inc., 272 Ga. App. 695, 697, 613 S.E.2d 218 (2005) (holding that a thirdparty beneficiary only has standing when the contract is clearly intended for his benefit).
>
> In her response, Plaintiff, citing Astra USA, Inc. v. Santa Clara County, ––– U.S. ––––, 131 S. Ct. 1342, 179 L. Ed. 2d 457 (2011), argues that her third-party beneficiary rights must exist because the Agreement did not provide a method of relief in the Administrative Procedures Act. However, in Astra, the Court focused on the contract itself and whether there was any Congressional intent to authorize third-party beneficiary rights, not on whether the contract provided an alternate method of relief. Id. at 1348, n.4 ("We can infer no [third-party beneficiary] authorization where a contract simply incorporates statutorily required terms and otherwise fails to demonstrate any intent to allow beneficiaries to en-force those terms.").
>
> In this case, however, Plaintiff has failed to identify any express contractual provision creating an actionable third-party beneficiary right. Moreover, a third-party beneficiary status of a mortgagor within the Agreement has not been recognized by any court in the Eleventh Circuit. See Warren v. Bank of Am., No. 4:11–cv–70, 2011 WL 2116407, at *2–3 (S.D. Ga. May 24, 2011) (holding that "HAMP agreements do not disclose any clear intent to make all mortgagors intended beneficiaries"); Hall v. Wells Fargo Bank, N.A., No. 7:11–cv–63 (HL), 2011 WL 4345190, at *2 (M.D. Ga. Sept. 15, 2011) (noting that there were no express contract provisions under HAMP that created third-party beneficiary right of action); Kabir v. Statebridge Co., LLC, No. 7:11–cv2747–WSD, 2011 WL 4500050, at *8 n. 11 (N.D. Ga. Sept.27, 2011) (holding that HAMP does not vest "mortgagors with third party beneficiary rights to enforce HAMP agreements under Georgia law"). Based on the facts of the instant case, the Court agrees with its sister courts that there is no evidence of Congressional intent to authorize third-party beneficiary suits in the Agreement.

Finch v. Bank of Am., N.A., No. 3:12-CV-14 CAR, 2012 WL 1188275, at *2 (M.D. Ga. Apr. 9, 2012) (Royal, J.).

Similarly, Defendant has failed to cite to any provision in its servicer participation agreement that could even arguably create an actionable third-party beneficiary right. In the absence of any such provision, any claimed attempt by Plaintiff to be bringing a third-party beneficiary claim to enforce HAMP through the servicer participation agreement "is in essence a suit to enforce [HAMP] itself." Astra, 131 S. Ct. at 1345. As the Court has already determined, see supra, state law claims that implicate HAMP do not raise federal issues sufficiently substantial to confer federal question jurisdiction under § 1331.[4]

Defendant asserts no other federal law under which Plaintiff's claims might arguably

---

[4] Defendant cites to Larsen v. Bank of Am., N.A., Civil Action No. 11-1775 MJD/JSM, 2011 WL 6065426 (D. Minn. July 21, 2011) in support of its argument that Plaintiff's purported third-party beneficiary claims give rise to federal question jurisdiction. However, the allegations to support such a claim were far more substantial in the Larsen complaint than those in the present TRO Petition. See Larsen, 2011 WL 6065426, at *8-9 ("Plaintiffs allege that they are the third party beneficiaries of a contract between the defendants and the federal government, the 'Major Financial Institution Participation Commitment,' which has operated to 'satisfy Plaintiffs' PSA creditors and at the same time has allowed Defendants to foreclose on the security for Plaintiffs' obligations to the PSA–Plaintiffs' homes.' Amended Complaint, ¶ 87; ¶ 182 ('As intended or unintended third-party beneficiaries *to the agreements between the defendants and the Federal Government,* Plaintiffs are entitled to have their obligations under their Original Notes reduced by a percentage equal to payments made by the federal government to the Certificate Holders.') (emphasis added)… Here, plaintiffs have placed the interpretation of the federal contracts entered into by the lender/servicer defendants squarely at issue by asking as relief for a declaration that "Plaintiffs' payment obligations due on the Original Notes have been discharged due to payments made by third parties, including but not limited to private insurers and government agencies." Amended Complaint, Prayer for Relief, ¶ H.").

Moreover, in finding that "whether plaintiffs have standing to sue as third party beneficiaries of the TARP agreements, and whether the TARP funds disbursed to the lenders discharged plaintiffs' obligations under their notes raise substantial questions of federal law with national implications[,]" Larsen relied primarily on Copeland-Turner v. Wells Fargo Bank, N.A., No. CV-11-37-HZ, 2011 WL 996706 (D. Or. Mar. 17, 2011), which itself relied primarily on County of Santa Clara v. Astra USA, Inc., 588 F.3d 1237 (9th Cir. 2009), in holding that "a claim by plaintiff that he is the third-party beneficiary of a contract between Wells Fargo and the federal government would meet the 'arising under' prong of section 1331 because the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law." Copeland-Turner v. Wells Fargo Bank, N.A., CV-11-37-HZ, 2011 WL 996706 (D. Or. Mar. 17, 2011). County of Santa Clara v. Astra USA, Inc., 588 F.3d 1237 (9th Cir. 2009), was reversed by Astra, 131 S. Ct. 1342 (March 29, 2011), twelve days after Copeland-Turner issued. Because neither Larsen nor Copeland-Turner (the latter, understandably) discussed the impact of the Supreme Court's decision in Astra on establishing federal question jurisdiction on removal, the Court does not find Larsen persuasive.

arise, and none is apparent on the face of the TRO Petition (Doc. 1-1 at 1-4). Moreover, no other basis for subject-matter jurisdiction is apparent from the record. Accordingly, Defendant, as the party who sough removal, has failed to meet its burden of demonstrating that federal jurisdiction exists.

The removal statutes provide: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Accordingly, it is **ORDERED** that Plaintiff's Motion to Remand (Doc. 7) is **GRANTED** and that this case is **REMANDED** to the Circuit Court of Dallas County, Alabama.[5]

**DONE** and **ORDERED** this the **14th** day of **May 2014**.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[5] Thus, all other pending motions (Docs. 3,4) are **MOOT**.